and we will hear first from attorney Avar. I apologize if I've got that pronunciation wrong. Please feel free to correct me. Thank you, Your Honor. Vinar, A-R, it's actually A-Y-A-R, appearing on behalf of petitioner Said Rum. May it please the court, Your Honor. This case has many issues, as I'm sure the court is aware from the briefing, some of which are questions of first impression in this very court. Today, however, I want to focus on just one well-settled issue, and that is the notion of due process and the idea that in America, everyone is entitled to a fair opportunity to contest the government's findings before they can be deprived of their property. The Administrative Procedures Act was written and designed to protect this constitutionally guaranteed fundamental human right. That is why under section 706.2.F, as interpreted by the Supreme Court in Citizens to Preserve Overton Park, requires the court to conduct a de novo review of the agency's action whenever that action meets two requirements. One, that it was adjudicatory. Yes, Your Honor. I'm sorry to interrupt, but that seems like an uphill battle to me. I mean, the Overton Park exception has been so rarely used, and it's been used in a circumstance where it was clear that the people who were making the decision were biased because they were involved in, they were part of the alleged wrongdoing. So, you know, that just seems, I'm not sure that you're going to be able to make headway on that. I haven't spoken with the other judges on the panel, so I may be alone in my view on that, but I think that's an uphill battle. Thank you, Your Honor. I understand the challenges in that argument. However, I would like to make clear that the proceedings in this case were fundamentally flawed because they lacked basic notions of due process and basic protections. What findings of fact are we talking about? One, that he was willful, and two, that the amount of the penalty was computed improperly. And what do I mean when they say they lacked fundamental notions of due process? You know, Judge Henry Friendly, in his highly influential Some Kind of Hearing article, lists the three most important aspects of due process as an unbiased tribunal, notice of proposed action and the grounds asserted for it, and the opportunity to present reasons why the proposed action should not be taken. The appeals hearing held in this case lacked all three of those things. One is the appeals officer has shown that she was not unbiased in her deciding case when she chose to introduce a new issue and a new argument that directly contradicted findings of fact made by the examiner in the case. She revealed herself as an advocate for the government rather than an unbiased arbiter. What finding of fact am I talking about? The examiner, in writing, specifically agreed that Mr. Rumm fully cooperated with the exam. And then in the appeals case memorandum, which was kept secret for almost 10 years, the appeals agent argued that Rumm did not fully cooperate. It was a total new issue that was contrary to public policy for her to raise. Counsel, the Internal Revenue Manual, which you rely on extensively and understandably throughout your brief and your presentation for the district court, specifically says that 8-8.6.1.7.2, subsection 3, that in resolving disputes, appeals may consider new theories and or alternative legal arguments that support the party's position when evaluating the hazards of litigation in a case, and that new or additional cases as a subsection 4 that support a theory argument previously presented does not constitute consideration of a new issue. That is correct, Your Honor. And this case is different because that was not a new legal theory. That was a finding of fact. The question of whether or not Mr. Rumm cooperated with the exam is not a legal theory. It is a factual finding. And it was a finding that was made at the examination level and then directly contradicted by the appeals officer. And appeals officers are not supposed to contradict findings of fact made by the examiner. Counsel, can I ask you a question? What harm would that have possibly done when everyone agrees in the main argument that's been made at the district court, that's been made to us, that was relied on below is that it was a willful violation. And that was incorporated in the original findings from the revenue agent, that was sustained by the appeals court, that was the basis of the district court summary judgment, and that's the argument before us. Even if there was this alternative finding, no one seems to have relied on it, right? That is not the case, Your Honor. There are two main findings in the case. One is whether or not Mr. Rumm was willful, and two was how should the penalty be applied. And under the Internal Revenue Manual, which I understand is not law, but it is the only body of rules that cover this area, it makes it clear that if Rumm qualifies for mitigation, if he met four threshold conditions, then the examiner would have been required to exercise discretion. Counsel, the Internal Revenue Manual says that if the amount in the account, if the amount that's at issue here is above a certain threshold, then they're required to apply the maximum. And that mitigation does not apply if the penalty is assessed here, and the penalty was in fact determined by the revenue agent, by the IRS. So how then was that not perfectly consistent with the Internal Revenue Manual that mitigation was not considered? Okay, well, with respect to the first part of your statement, with all due respect, that is not exactly what the Internal Revenue Manual says. Counsel, I'm not making a statement. I'm merely asking you a question as I understand the law. Please tell me if I have something incorrect. I want to know if I have it wrong. Yes, Your Honor. The mitigation guidelines actually do not require the examiner to apply a 50% penalty in all cases where the balance exceeds $1 million. To the contrary, the mitigation guidelines make it clear that they are just that. They are just guidelines to aid in the exercise of discretion by the examiner, and they have the ability to determine if a lesser penalty or even no penalty is warranted under the facts. Now, if this court would like an example of when that discretion has been applied exactly in that fashion, it must look no further than this one. Counsel, doesn't the Internal Revenue Manual say specifically that where those four mitigation factors are to be considered or the mitigation not considered if it's determined that a penalty is going to be assessed, right? That is not specifically what it says. It says that if a fraud penalty is sustained, it used the word sustained in the actual guidelines. In my interpretation, that means sustained after an opportunity to litigate, after an opportunity to take it to court. But even if that's not what it meant, at the appeals level— But you're looking at— Counsel, you're looking at one of them. You're looking at 4-26.16.4.6.1, subsection 2, subsection D. But what about Internal Revenue Manual 4.26.16-1, which says that mitigation guidelines require that the IRS did not determine, not sustain, but did not determine a fraud penalty against a person for an underpayment of income tax for the year in question? Again, Your Honor, I believe that that is—the question of whether or not the IRS determined the fraud penalty, it would have to mean after an opportunity for appeal. At the very least, at the administrative level. Okay, so Mr. Rumm should have been afforded an opportunity to convince the appeals officer that the fraud penalty should not have been assessed, and therefore, he should have been granted mitigation. Unfortunately, because of the deficiencies in this proceeding, Mr. Rumm was never given that opportunity. He never had a chance to argue before the administration that he did qualify for mitigation. By misleading him as to the reasons of the decision they made at the time they made it, they effectively prevented him from having any opportunity to contest their findings. So a failure to give him de novo review now would amount to a deprivation of due process. That is where I think this case is every bit as egregious as the other cases where the Overton Park exception has been applied. Just like in the Porter v. Califano case, the court found that the process was inadequate because the biased or otherwise inadequate initial fact-finding process was not cured by a subsequent impartial and full review in the agency. That is what we have here. But counsel, that's because, as Judge Rosenbaum said, the initial fact-finder there was the person who was the subject of the complaint. In other words, it was someone who was actually involved in the litigation deciding the litigation. That's not true here. That is not true here. Every case is different. What we had in this case was an examiner who testified that this was the first time she had ever done a case like this, and she did not read the manual before she did her case. And in her communications to the agent, she misplaced the rules. Counsel, one minute warning. Thank you. In her communications, she specifically told him that the only way she could have discretion and lower the penalty is if he agreed to the fraud penalty. That was the only explanation she ever gave him. That directly contradicts the manual. So the fact that he had an examining agent who didn't read the manual, never did a case like this before, has stated in writing reasons for her decision which directly contradict the established policies and procedures of the IRS. Was the manual secret to you, counsel, or to your clients or whoever represented your client at the time? No, Your Honor. The manual is publicly available online. Right. So anyone could have made the arguments consistent with the manual at any time. No one was prohibited from doing that, right? Yes, Your Honor, if they were savvy enough to figure out on their own this issue and argue it. Because the problem here is the agent's direct statement was the only way to qualify for mitigation or for a reduction is to agree to the fraud penalty. That is the exact opposite of what the manual would say. So even if he found the manual, which he was not alerted to the manual or the mitigation or anything being a reason for the decision, he asked for mitigation, he asked for reductions many, many times, and nobody ever alerted him to these requirements or their role in his case. Now, although the manual is publicly available, the administrative processes need to be designed in a manner that a layperson should understand what's going on and what are the issues against them so that they don't have to find out that something called the Internal Revenue Manual even exists, let alone find relevant provisions, let alone argue that the examiner, who is supposed to be the expert in these matters, got it completely backwards. Her statement to him is the exact opposite. Thank you, counsel. And we reserve three minutes for rebuttal, and we will hear from Attorney Clements again. If I got the pronunciation wrong, I apologize, and please let me know what the correct one is. May it please the court, Jeff Clements of the United States. The district court correctly granted the government's motion for summary judgment and sustained the FBAR penalty assessed against Mr. Rumm. As brother counsel has confined himself to two issues, I will likewise confine myself to those two issues unless the court has questions about other issues that were raised in the brief. First, the evidence shows that Mr. Rumm's failure to report his Swiss bank account at UBS was attributable to reckless disregard and, therefore, willful, where it's undisputed that he repeatedly signed tax returns falsely representing that he had no foreign account, never sought advice about his account, despite repeated admonitions from UBS that he do so, and actively concealed both the account and its earnings. Second, the administrative record shows that the IRS engaged in reasoned decision-making in imposing a 50 percent penalty, where the account balance exceeded $1 million. Mr. Rumm actively managed the account, including traveling to Switzerland to do so. Mr. Rumm actively concealed the account and failed to pay taxes on his earnings for a decade. And Mr. Rumm provided inconsistent statements to IRS agents. But, counsel, what your opposing counsel is stating is that the reasoned consideration standard, the arbitrary and capricious standard, does not apply here, that we should apply a de novo standard of review under Volpe. Tell me why that's wrong or that he doesn't have a point that there were problems with the administrative process which would put this within the Overton Park exception. Sure, Your Honor. For us to sit within the Overton Park exception, we would, at a minimum, have to have some deficiency in the fact-finding procedures. Here, there's no suggestion that that occurred where the relevant evidence was provided by Mr. Rumm, by his counsel, and by Mr. Rumm's bank. There's no evidence of bias. You had an examiner who has no prior relationship with Mr. Rumm. And you have a situation in which the decision-making process was documented throughout. It's important to remember that what is under review is the final agency action, not the proposed assessment made by the examining agent, but the sustaining of that proposed assessment by the appeals officer. And the examining agent's report was produced to Mr. Rumm. The same facts that I'm citing today in support of the 50% penalty are the same facts that are laid out in the examining agent's report, which was produced to him prior to the appeals conference, are the same facts that are then laid out in the appeals memo, which was produced to him in discovery. No order compelling it to be produced, just produced in the normal course during discovery. What about the argument regarding alternative fact-finding by the appeals agent? If the appeals officer found facts contrary to the Internal Revenue Manual and contrary to anything in the record that was there and that was presented as an appellate issue, does that not cause a due process problem or a problem under Volpec? What the district court said, and said correctly, is that it's ultimately harmless error and ultimately irrelevant whether or not this occurred. We don't think it occurred, that this was an alternative argument in support of an existing issue that had already been raised. And we don't think there's alternative fact-finding, whether Mr. Rumm cooperated or fully cooperated. I don't think there's necessarily an inconsistency between the examining agent saying that he was cooperative and the appeals officer saying that he was not fully cooperative. But what the district court said is, look, that was an alternative basis for saying that Mr. Rumm did not qualify for the mitigation guidelines. He also did not qualify for the mitigation guidelines based on the fact that the IRS determined and sustained civil fraud penalties for the year at issue. Now, there's been a lot of ink spilled about these mitigation guidelines and whether Mr. Rumm qualified for them or not. It's our position that because the civil fraud penalty was both determined and sustained by the IRS, that he does not qualify for the mitigation guidelines. So, this is a red herring. Even if he does qualify for the mitigation guidelines, those guidelines say just simply that the dollar amount of a penalty is correlated with or the percentage amount of the penalty is correlated to the dollar amount held in the foreign accounts. Higher dollar accounts lead to higher percentage penalties. Lower dollar amount accounts lead to lower percentage penalties. And those mitigation guidelines say that for accounts with at least a million dollars, with over a million dollars, the default penalty is 50%. So, even if we give Mr. Rumm the benefit of those mitigation guidelines, which he doesn't qualify for on their face, that does not reduce the penalty that would be imposed by a single dollar. He still ends up with a 50% penalty, which is what was imposed. So, at a minimum, this is harmless error, which is what the district court held. But, again, there are multiple reasons, or at least one reason why he didn't qualify for the mitigation guidelines, regardless of this alternative conclusion reached by the appeals officer. He just doesn't check those four boxes that would entitle him to mitigation, and it wouldn't make a difference even if he did. We would note that Mr. Rumm was represented by an attorney. I guess you're saying the reason he didn't qualify for the—this is Judge Anderson—the reason he didn't qualify for the mitigation guidelines is the fraud penalty. Is that correct? That's correct, Your Honor. Okay. Does not the agent have some discretion, even if there is a fraud penalty? That's right. Or is it absolutely clear that the agent has no discretion to reduce the penalty if there is a fraud penalty proposed? Right. So, it's a two-step analysis. So, the first step is these mitigation guidelines. And at step one, regardless of whether Mr. Rumm is entitled to mitigation, you still end up with a 50% penalty. Then step two is, notwithstanding these mitigation guidelines, you could adjust the number you determine under those guidelines and make a discretionary adjustment based on the facts and circumstances that are present in the case. And so, the question is, what are the facts and circumstances? My next question is, it seems to me—I haven't read the record of the administrative proceedings yet—but it seems to me almost inevitable anybody, any lawyer, as a matter of common sense, would be arguing facts and circumstances if there were any. I suspect that this counsel did, in fact, argue facts and circumstances. Did he not? Yes, Your Honor, he did. He made four arguments on the facts and circumstances. And this is Alan Gabel, who holds himself out as a tax specialist on his website. First of all, he also argued that the civil fraud penalty was inapplicable. He filed a three-page protest letter, which is a docket 58-35, contesting the civil fraud penalty. But even going beyond that, he argued for a discretionary reduction in the FBAR penalty. He gave four reasons. He said that Mr. Rumm had made things right after the examination started. But, in fact, that's not true. Mr. Rumm had a foreign account for 10 years. You've answered my question. I thought I recollected, and I do remember those four things. And so the gist of my question, which is favorable to you, is that, notwithstanding his argument now that he didn't have an opportunity to argue facts and circumstances, he did, in fact, argue facts and circumstances. That's exactly correct, Your Honor. He did so, and he has not renewed the arguments he made at the administrative level on appeal because they're just spatially meritless. But he absolutely had the opportunity to and did raise facts and circumstances at the administrative level. We would submit that Mr. Rumm was afforded a full and fair opportunity to raise any complaints that he had, did so, and simply is unhappy with the results. He was also offered a settlement, but the fact that he was offered a settlement was also... Go ahead, Your Honor. Sorry, this is Robert Luck. If I can just go back a second. Was the appeals court's determination that it could not consider mitigation or he was not eligible for mitigation under Step 2, as you described it, because he was assessed the civil fraud penalty and because he did not fully cooperate? So, the appeals officer concluded that Mr. Rumm was not entitled to the mitigation guidelines for two reasons. One, the imposition of the civil fraud penalty, and then, in the alternative, because there was not full cooperation. So, it relied on both of those reasons as reflected in the appeals memo. Right. So, is the question then not a matter of whether mitigation was argued, but, in fact, whether the IRS would even open its eyes or consider that mitigation because it viewed it as inapplicable because of the Internal Revenue Manual? Well, I think that the examining agent actually testified that she did look at the facts and circumstances. So, her testimony, and this is at her deposition at Docket 58-6... But we're talking about the appeals office. We're talking about the administrative, as you noted, the administrative decision of the IRS. Right. So, there's language at the end of the appeals officer's memorandum where she states that Mr. Rumm had not persuasively argued for relief from the 50% penalty. It's a summation at the end where she says he's not argued persuasively for relief. That goes back to the four reasons that he offered, which, again, he does not renew on appeal. So, the appeals officer does say the mitigation guidelines, the threshold conditions are not satisfied. And then she also says, and he has not argued persuasively for relief. So, I think that addresses... Sorry. So, the appeals officer made that alternative finding or that alternative conclusion? That's correct. She says that he did not argue persuasively for relief at the end of the memo after saying that, as a threshold matter, he did not qualify for the mitigation guidelines. Correct. And ultimately, we agree that the Internal Revenue Manual guidelines are not binding. They don't confer any legal rights on taxpayers. But here, in this instance, the IRS complied literally and in each specific with those manual provisions. These purported errors that are being raised by Mr. Rumm are simply illusory, that he had access to the relevant facts because they came from him. He had access to the examining agency report. He was given the appeals officer's memorandum after he filed suit in the normal course of discovery. He had an opportunity to make his case. He did not make it persuasively at the administrative level. I guess the only argument that he's really made in terms of why the penalty should be reduced on appeal is one that appears in his reply brief, where he says that the penalty is disproportionate. We would submit that that argument was not raised at the administrative level, was not raised in the district court, and was not raised in his opening brief on appeal. And should not be considered by this court because it's been raised several times over. That being said, we think it's meritless in any event for a number of reasons. The first of which is that, you know, he's complaining that the penalty amount is not specifically correlated to the tax loss. But there's nothing in the statute that requires such a correlation. And, in fact, the statute links the penalty amount to the balance in the account, not the tax loss. Secondly, Mr. Ruhm has done nothing to calculate what that actual tax loss is, even at this stage when he's raising it in his reply brief. He has not calculated the tax owed, although presumably he has the information to do so. He has not calculated what the interest that would have accrued over a decade would be, nor has he calculated what the late payment penalty would be on that tax. And, furthermore, he's also construing harm very narrowly and only looking at the tax loss. Not looking at the cost of the investigation at either the account holder level or at the institutional level. Not looking at the cost of conducting an examination audit of him. Not looking at the fact that- Counsel, I'm going to ask you a question, if I might. This is Judge Anderson. It goes to the issue of willfulness, recklessness, and whether there are any genuine issues of fact in that regard. During the 2006 audit, the first one of the two, I know, I gather from the briefs, that the fact that he had that foreign account at UBS came up. When, during that 2006 audit, which I understand began at the end of 2008, when did that come up? And how long did he wait after that came up before he filed his amended, belated FBAR return report, which was triggered by the UBS revelation to him? What was, in other words, what I'm trying to decide is whether or not what he learned or should have learned in that 2006 audit also is further evidence of his recklessness and or willfulness in failing to file the FBAR report. Yes, Your Honor. I'm not sure as to the exact date when Mr. Rumm submitted information during the 2006 audit about the foreign account. What he told the IRS was he gave them a document, a bank statement from his UBS account saying that the balance was zero, but did not disclose to the IRS that, in fact, he had moved the funds from UBS to another Swiss bank, to Arab Bank. Mr. Rumm filed his FBAR for the 2008 year, not the 2007 year that's at issue, on October 15, 2009, which was approximately two weeks after UBS notified Mr. Rumm that he had turned his information over to the IRS. So, Mr. Rumm's testimony was that he received a call from a UBS employee in October 2008 and that that was what prompted him to close the UBS account and transfer the funds to another Swiss bank, Arab Bank. I have one more question. Did the bank UBS alerted him to the need to report the income? Was it 2004 that that happened and at that time he failed to file the W-9s? Yes, Ron. I don't have the date in front of me that he waived his right to invest in U.S. securities. I'd have to look back at the docket. I think it's docket 31-7 and 31-10, but I do not have the date at my fingertips. I apologize. Fine. That's all right. We can look it up. Thank you. All right. Thank you, Mr. Klimas. And we will hear from Mr. Ayyad. Okay, Your Honor. One of the things that opposing counsel has argued is that Mr. Rumm did not qualify for the mitigation because the fraud penalty was sustained at the appeals level. And this court has correctly pointed out that in his written argument to the appeals office, he did raise issues about the fraud penalty. However, the appeals process is not just submitting written arguments. It also contains an opportunity to have a hearing with an appeals officer, and that hearing is an important part of the process. And if there is not a fair hearing, then the whole process is tainted. And in this case, at the hearing, the only thing Mr. Rumm argued was that he wanted to get back to the deal that Ms. Kerkato proposed him. He wanted to agree to the fraud penalty, and he wanted to get a 20 percent penalty. Now, rather than correct Mr. Rumm about the fact that if he agreed to the fraud, he could not get the 20 percent penalty, the rules just didn't allow it, the appeals officer allowed him to continue arguing that and only talked about that one issue. And her record and her notes indicate that on the date of the hearing, she did not even know that the mitigation factors were an issue in the case. So, he did not have any opportunity to present arguments because he thought that the only way to get the penalty reduced was to agree to the fraud. So, at the actual hearings, which took place, he did not contest, and he thought that he had to agree to the fraud, and she let him take that. And then, it wasn't until she wrote her appeals case memorandum and sent it to her issue coordinator several times, I think there were six or seven revisions, it took about a year for this appeals case memorandum to be written, and that is where this mitigation stuff is contained. Prior to that appeals conference, or at the appeals conference, or any time after the appeals conference, but before the decision was made, Rumm was never notified that if he accepted the fraud penalty, he could not get a reduction. Mr. Cotto's statement to him was false, but he believed her because she worked for the government, and nobody corrected him. There were many opportunities along the way to tell Mr. Rumm that, you know, if you accept the fraud penalty, the only way to win is to overturn the fraud penalty, and nobody ever told him that. So, they, in effect, denied him an opportunity to be heard. And to the point about the mitigation guidelines, if the mitigation guidelines say a 50% penalty is presumptive, the agent still has discretion to deviate, and that's what happened in the Schwartzbaum case, which is pending before this very court. In the Schwartzbaum case, the mitigation guidelines called for a $30-some million penalty. However, the agent exercised her discretion in asserting a $10 million penalty. In this case, the agent testified at her deposition that… Counsel, your argument has expired. Thank you. Thank you, counsel.